**LIBBEY GLASS, DIVISION OF OWENS–ILLINOIS, INC.,**
Plaintiff–Appellant,

v.

**The UNITED STATES,**
Defendant–Appellee,

and

**J.G. Durand International,**
Party–in–Interest/Appellee.

**No. 90–1295.**

United States Court of Appeals,
Federal Circuit.

Dec. 18, 1990.

Eugene L. Stewart, Stewart & Stewart, Washington, D.C., argued for plaintiff-appellant. With him on the brief were Terence P. Stewart and Charles A. St. Charles. Also on the brief was Arthur Smith, Sr. Atty., Libbey Glass, Toledo, Ohio, of counsel.

Barbara M. Epstein, Dept. of Justice, New York City, argued for defendant-appellee. With her on the brief were Stuart

M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

David O. Elliott, Barnes, Richardson & Colburn, New York City, argued for party-in-interest/appellee. With him on the brief was Sandra Liss Friedman.

Before RICH, MAYER and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

Libbey Glass appeals the February 13, 1990 judgment of the United States Court of International Trade dismissing its suit to reclassify items of beverageware manufactured and imported by J.G. Durand International. *Libbey Glass v. United States*, 736 F.Supp. 277 (Ct.Int'l Trade 1990). Because the court correctly construed and applied the tariff term "toughened (specially tempered)" to the imported glassware, we affirm.

## BACKGROUND

J.G. Durand International manufactures, and imports into the United States from France, tempered glass beverageware, including six products designated "Artic Stemware" (consisting of "Champagne," "Wine," and "Goblet" drinking glasses) and "Artic Tumblers" ("Old Fashioned," "Highball," and "Beverage" drinking glasses).

The Customs Service originally classified Durand's drinking glasses under item 546.-38 of the Tariff Schedules of the United States (TSUS)[1], which covers "Glassware ... pressed and toughened (specially tempered), chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients." Arguing that Durand's glassware was not really "specially tempered" so as to qualify for the relatively low tariff under item 546.38, Libbey Glass in 1981 petitioned the Customs Service, as provided in 19 U.S.C. § 1516 (1988), to reclassify nine of Durand's products under TSUS items 546.52 through 546.68,

which cover "other" glassware and impose a higher tariff. The Customs Service granted the petition as to three items of glassware (designated "Grand Vin"), but denied it as to the six "Artic Stemware" and "Artic Tumblers" products, T.D. 83-154, 17 Cust.B. & Dec. 332, 340 (1983). Libbey contested the Customs Service's decision as to Durand's "Artic Stemware" and "Artic Tumblers" by filing suit against the United States in the Court of International Trade, pursuant to 28 U.S.C. §§ 1581(b) and 2631(b) (1982), requesting reclassification of the Durand merchandise under TSUS item 546.52 ("other" glassware, "Valued not over $0.30 each") or item 546.60 ("Valued over $0.30 but not over $3 each"). The burden of proving error in the Custom Service's determination was on Libbey, 28 U.S.C. § 2639(a)(1) (1988), and after trial on the merits, the court rendered a decision upholding the classification, *Libbey*, 736 F.Supp. at 284. Pursuant to 28 U.S.C. § 1295(a)(5) (1988), we have exclusive jurisdiction over Libbey's appeal.

## DISCUSSION

■ Whether a particular product fits the definition of a term in the TSUS is a question of fact, which we reverse only if clearly erroneous. *E.g., Daw Industries, Inc. v. United States*, 714 F.2d 1140, 1142 (Fed.Cir.1983). The meaning of a particular term, however, is a question of law, and therefore not entitled to the deference we exercise with respect to fact questions. *Id.* Likewise, the ultimate issue of whether a particular product has been correctly classified is a question of law. *See Amersham Corp. v. United States*, 728 F.2d 1453, 1455 (Fed.Cir.1984).

### I

■ Libbey argues that the construction of TSUS item 546.38 employed by the Customs Service and the Court of International Trade is wrong because it gives different

---

1. The TSUS, which was in effect at the time the classification at issue here was made, was later replaced by the Harmonized Tariff Schedule of 1988, Pub.L. No. 100–418, 102 Stat. 1148 (codified at 19 U.S.C. § 1202 (1988)).

meanings to the phrase "toughened (specially tempered)" in two different provisions of the Tariff Schedules. TSUS item 544.31, found in the subpart of TSUS Schedule 5 dealing with "flat glass and products thereof," covers "[t]oughened (specially tempered) glass ... whether or not shaped or framed or both." The U.S. Tariff Commission's Tariff Classification Study of November 15, 1960, part of the legislative history of the TSUS, stated that this provision was intended to cover "specially tempered glass that is more resistant to shock than ordinarily tempered glass, and, when broken, disintegrates into small rounded-edge pieces, rendering it particularly adaptable to vehicle glazing." The flat glass covered by 544.31—often called "safety glass"—is commonly used in automobile windshields, large glass doors, and other applications in which it is important that the glass have no sharp edges when it breaks.

Item 546.38 was not accompanied by an explanatory note in the Tariff Classification Study similar to that accompanying 544.31. But Libbey argues that under the principle that statutes *in pari materia* (i.e., relating to the same subject matter) should be read, construed, and applied together, "toughened (specially tempered)" should have the same meaning in 546.38 as in 544.31. Specifically, Libbey maintains that for drinking glasses to qualify for classification under item 546.38, they must *completely* "dice"—crumble safely into small, rounded-edge pieces—when broken, like the flat safety glass classified under 544.31.

The trial court found, and indeed it is undisputed, that while the Durand glasses at issue here do exhibit a considerable degree of dicing upon breakage, they do not dice *completely*, as a piece of flat safety glass would. Rather, when a Durand tempered drinking glass is broken, it largely disintegrates into harmless gravel, but with some larger, sharp-edged shards also present. Libbey therefore argues that if "toughened (specially tempered)" is given the same meaning in 546.38 as in 544.31, which requires complete dicing, the Durand glassware at issue does not qualify.

■ Libbey's argument has a certain superficial plausibility. As Libbey points out, "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87, 55 S.Ct. 50, 51, 79 L.Ed. 211 (1934) (quoting *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932)). Thus, it would seem logical to read "toughened (specially tempered)" as having the same meaning from one section of the Tariff Schedules to another. But "the presumption [of identical meaning] readily yields to the controlling force of the circumstance that the words, though in the same act, are found in such dissimilar connections as to warrant the conclusion that they were employed in the different parts of the act with different intent." *Id.* This is just such a circumstance.

In the first place, TSUS items 544.31 and 546.38 really are not *in pari materia*. While both safety and durability are obviously desirable properties in drinking glasses and in flat glass, we see no clear error in the trial court's finding that the primary goal of tempering flat glass is safety, as for example in vehicle windshields, while the main purpose of tempering drinking glasses is durability. *Libbey*, 736 F.Supp. at 284. Indeed, as the court noted, ordinary annealed glass, which breaks into large, sharp pieces, is commonly used in drinking glasses and is not generally considered dangerous. *Id.* Since the uses and desirable attributes of the products covered by 544.31 and 546.38 are quite different, there is no reason to require that a phrase appearing in both provisions be given the same meaning.

Second, the legislative history fails to support the proposition that language appearing in both tariff items should be given the same meaning. Although 544.31 and 546.38 became law at the same time, the trial court correctly noted that the derivation and context of each were different. While item 544.31, as described in the Tar-

iff Classification Study, was intended to cover glass having certain characteristics upon fracture, item 546.38 was created after a French glass manufacturer, Compagnie de Saint–Gobain, requested a new tariff provision for glassware fully tempered over its entire surface which the manufacturer represented as possessing superior durability. *Libbey*, 736 F.Supp. at 283. We are aware of no clearly expressed legislative intention that items 544.31 and 546.38 are to have the same meaning, or that the words of 546.38 mean anything other than what they explicitly state: glassware that has been "toughened" (thus increasing its resistance to mechanical and thermal shock) by being "specially tempered."

Third, even assuming that we were to give the same meaning to "toughened (specially tempered)" in both items, Libbey's argument relies on an assumption that 544.31 requires complete dicing. Libbey has not demonstrated that this assumption is necessarily correct. The Tariff Classification Study states only that glass to be classified under 544.31 "disintegrates into small rounded-edge pieces"—not that it disintegrates *entirely* and *exclusively* into such pieces. It may be common experience that flat safety glass does completely dice, but neither 544.31 nor the Tariff Classification Study comment on it requires on its face such total dicing. The question of the meaning of 544.31 of course is not before us in this case, and we express no opinion as to it, but Libbey's argument is undermined to the extent that it has failed to demonstrate even that 544.31, much less 546.38, requires complete dicing.

Finally, both parties agree that when TSUS item 546.38 was originally enacted, it essentially applied only to Saint–Gobain's tempered glassware. The trial court found, and it is undisputed, that the Saint–Gobain glassware was no more highly tempered than the Durand products at issue here, and thus, according to Libbey, would not qualify under the statute. Nor can we find any clear error in the trial court's finding, based on the admissions of Libbey's own witnesses at trial, that the Durand glasses at issue here are as fully tempered as any beverageware on the mar-

ket. Libbey would ask us to adopt a reading of the Tariff Schedules under which neither the glassware that apparently led to its enactment nor any ever marketed could be classified under 546.38. This we decline to do.

Libbey also argues that the Court of International Trade improperly limited its analysis to the meaning of the word "specially" in isolation. This argument seems to be based on several sentences of the opinion taken out of context, and in view of the court's analysis elsewhere of the precise statutory language, we do not find this criticism justified. Nor do we find support in the record for Libbey's *ipse dixit* assertion that the court "equat[es] 'specially' tempered with any degree of temper at all, [and] in effect defines 'special' as 'ordinary.'" Appellant's Opening Brief at 35.

## II

Having determined that the construction given to the term "toughened (specially tempered)" in TSUS item 546.38 by the Court of International Trade was correct as a matter of law, we turn to the factual question of whether the Durand products at issue fit the definition of that term. The court made specific findings, based on the testimony of witnesses and the physical evidence produced at trial, that the Durand products at issue were fully tempered over their entire surfaces and that they were toughened overall to a greater degree than ordinary annealed or partially tempered glassware. We do not consider these subsidiary findings of fact to have been clearly erroneous, nor can we so consider the overall finding that the Durand beverageware was "toughened (specially tempered)" within the meaning of TSUS item 546.38. Since there was no issue with respect to the application of any additional term, the Customs Service's classification was correct as a matter of law, and so we hold.

## CONCLUSION

We hold that item 546.38, TSUS, for glassware "toughened (specially tempered)," applies to full-surface tempered

glassware which has greater resistance to mechanical and thermal shock than ordinary annealed beverageware. To qualify for classification under this item, glassware does not have to be tempered so fully as to result in complete dicing of the glassware upon breakage. The Durand merchandise here at issue was properly classified. Accordingly, the judgment of the Court of International Trade must be affirmed.

AFFIRMED.